IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned On Briefs February 1, 2011

## MACK TREMAINE JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 02-08108    James M. Lammey, Jr., Judge**

_____

**No.  W2010-01121-CCA-R3-PC  - Filed March 24, 2011**

_____

Petitioner, Mack Tremaine Jones, was convicted of one count of first degree murder and nine counts of attempted first degree murder.  As a result, Petitioner was sentenced to life in prison for the first degree murder conviction and twenty-two years for each of the nine counts of attempted first degree murder.  The sentences were ordered to be served concurrently. Petitioner's convictions and sentences were affirmed on appeal.  *See State v. Mack Tremaine Jones*, No. W2005-00014-CCA-R3-CD, 2007 WL 1840798 (Tenn. Crim. App., at Jackson, June 27, 2008), *perm. app. denied*, (Tenn. Oct. 15, 2007).  Petitioner subsequently sought post-conviction relief, on the basis that he received ineffective assistance of counsel.  After a hearing, the post-conviction court denied relief.  Petitioner has appealed.  On appeal, we determine that Petitioner has failed to show that he received ineffective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the appellant, Mack Tremaine Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Petitioner was convicted of one count of first degree murder and nine counts of attempted first degree murder as a result of a drug deal gone awry. Petitioner and two other defendants fired multiple shots into a residence, killing a three-year-old child and injuring several other children and at least one adult. *Id.* at *1-4. As a result, Petitioner was sentenced to life in prison for the first degree murder conviction and twenty-two years for each of the nine counts of attempted first degree murder. The sentences were ordered to be served concurrently.

On appeal, Petitioner challenged the sufficiency of the evidence and several evidentiary decisions made by the trial court. With regard to the sufficiency of the evidence, Petitioner argued that he lacked the intent to commit first degree murder and was actually incapable of forming such intent due to his mental disability. *Id.* at *8. This Court examined the evidence at trial, noting that the jury heard evidence that Petitioner "was 'slow' and attended special education classes" as well as testimony from Petitioner's own mother that he "was able to drive a car, play video games, and operate a camcorder and a television." *Id.* This Court also pointed out that when Petitioner gave a statement to police, he told them he "ducked down in the back of the car [when they drove away from the scene] because he did not want to be recognized and 'catch a charge.'" *Id.* As a result of the evidence presented, this Court determined that the evidence was sufficient to sustain the convictions. After examining Petitioner's other issues, this Court affirmed the convictions. *Id.* at * 12.

Petitioner then filed a pro se petition for post-conviction relief. In the petition, Petitioner alleged that he received ineffective assistance of counsel at trial. In particular, Petitioner complained that trial counsel: (1) failed to investigate and prepare a defense regarding Petitioner's "mental disease or defect;" (2) failed to consult and utilize an expert witness with regard to Petitioner's mental state; (3) failed to object to certain jury instructions; and (4) failed to advise Petitioner to accept the twenty-five year plea offer.

Counsel was appointed and an amended petition for post-conviction relief was filed. In the amended petition Petitioner again argued that he received ineffective assistance of counsel.

The post-conviction court held a hearing on the issues. At the hearing, trial counsel testified. He became licensed to practice law in October of 1979 and started practicing criminal law soon thereafter.

Trial counsel testified that he filed probably 100 pretrial motions in Petitioner's case. Initially, the State was seeking the death penalty. Trial counsel specifically recalled filing a motion regarding Petitioner's competency with respect to being subject to the death penalty. That motion was heard by the trial court.

At the hearing, the trial court heard the testimony of three experts regarding Petitioner's mental capacity. Dr. Sam Craddock testified that he evaluated Petitioner during a series of inpatient evaluations at Middle Tennessee Mental Health Institute. He concluded that Petitioner had a full-scale IQ of 66, placing him in the "upper limits of the mild range of mental retardation." Dr. Rokeya Farooque, a forensic psychiatrist at Middle Tennessee Mental Health Institute, also examined Petitioner during an inpatient forensic evaluation. She also diagnosed Petitioner as suffering from mild mental retardation. Finally, the trial court heard the testimony of Dr. Fred A. Steinberg, a psychologist in Memphis. Dr. Steinburg was retained by the defense to examine Petitioner prior to trial. Dr. Steinburg performed collateral interviews with family members, reviewed Petitioner's medical records, and did an adaptative behavioral scale. Dr. Steinburg classified Petitioner as "retarded," functioning "less than at the three-year old level in the following areas in terms of adaptative functioning:" (1) economic activity; (2) language development; (3) self direction; and (4) socialization. All three experts opined that Petitioner's condition manifested itself at birth.

After the trial court heard the proof offered at a hearing, the trial court determined that Petitioner "proved that he . . . meets the statutory criteria" thus the trial court ruled that "the state cannot seek the death penalty in this case." There was no finding or discussion with regard to Petitioner's competency to stand trial. After a review, we were unable to locate an order in the record memorializing this ruling.

At trial, counsel for Petitioner attempted to introduce the records from the hearing on Petitioner's mental competency for purposes of the death penalty for the "purpose of just showing that [Petitioner] has been under a disability, a mental disability." Counsel for Petitioner argued that the records would show Petitioner's "ability to draw his intent to participate in this [crime]." The trial court informed trial counsel that it would permit "an expert . . . to testify that he was incapable of forming the intent." The trial court asked counsel for Petitioner if he had filed a notice prior to trial of expert testimony. Counsel for Petitioner stated that there was no notice filed. Thus, the trial court ruled that the records were not admissible because they were hearsay. However, the trial court noted that counsel for Petitioner would be able to introduce the records during the bifurcated sentencing phase as a mitigating circumstance.

At trial, the trial court did not allow any testimony from Petitioner's mother during the case in chief, and trial counsel could not recall if he objected to this ruling or made an

offer of proof. The trial record reflects that counsel for Petitioner sought to introduce the testimony of Petitioner's mother about the fact that Petitioner "received a social security stipend for his mental disability, and [Petitioner] had trouble counting money." *Mack T. Jones*, 2007 WL 1840798, at *11. The trial court excluded this testimony on the basis that it was beyond "lay opinion testimony." Counsel for Petitioner did not make an offer of proof with regard to the proposed testimony and failed to raise this issue in a motion for new trial. The issue was raised as plain error on appeal and this Court determined that Petitioner was not entitled to review via the plain error doctrine. *Id.*

Petitioner's mother testified during the sentencing phase. She discussed Petitioner's mental competency including the fact that he was in Special Education classes and had difficulty with some things.

Trial counsel did not recall putting on any expert proof related to Petitioner's mental capacity at trial but recalled that three experts testified at the hearing prior to trial. On cross-examination, however, trial counsel agreed that the record indicated the jury heard evidence that Petitioner was "slow and attended Special Education classes and lacked sufficient mental capacity to form the requisite intent to commit the crime" from Petitioner's mother as well as evidence that showed Petitioner "was not the type of person who was easily led to do things." Trial counsel also agreed that, according to the opinion on direct appeal, the jury heard evidence from Petitioner's mother that Petitioner could drive a car, play video games, operate a camcorder, and operate a television.

In fact, trial counsel did not recall putting any witnesses other than Petitioner's mother on the stand during the trial. The trial record supports trial counsel's recollection. Trial counsel explained, "[t]he only witnesses I could find were not very favorable." Trial counsel explained that he initially wanted Petitioner to testify because he "would have made a decent witness for himself" and shown the jury that he did not have the mental capacity to form the intent necessary for the crime. Trial counsel felt that "the jury may have found it persuasive." At trial, the counsel for Petitioner and the trial court both questioned Petitioner about his decision to testify. At first, Petitioner stated that he needed more time to make the decision. The trial court allowed counsel for Petitioner to present witnesses and revisited Petitioner's decision at the conclusion of the witness testimony. After hearing the testimony of Petitioner' mother, the trial court reexamined Petitioner. Petitioner chose not to testify. At the post-conviction hearing, counsel for Petitioner stated that when Petitioner did not testify, he attempted to mount a defense by attacking the credibility of the State's witnesses.

Trial counsel recalled one plea offer of life without parole. He did not recall Petitioner being given an offer of twenty-five years.

Petitioner testified at the hearing. He informed the trial court that he received a social security check every month for his "mental mind" and stated that his "mind wasn't right." Petitioner confirmed that he was in special education classes in school. Petitioner claimed that he did not "fully understand" all the court proceedings. He insisted that he had another inmate help him prepare the pro se petition for post-conviction relief and claimed that he could not have prepared the petition by himself.

Petitioner testified that he did not participate in the investigation of his case on the trial level and was never shown any discovery materials by trial counsel. Petitioner recalled a plea offer of twenty-five years prior to trial. Petitioner also was under the impression that his mother and doctors were going to testify at trial about his mental capacity.

Petitioner did not think that trial counsel "did a good job" and did "not fully" investigate his case. On cross-examination, Petitioner admitted that trial counsel came to visit him several times prior to trial and was successful in blocking the State from seeking the death penalty. Petitioner also admitted that his mother testified at trial about the fact that Petitioner took Special Education classes.

Petitioner's sister, Monica Jones, also testified at the hearing. She testified that she hired a private investigator prior to trial with her own money.

The State called James Robert Carter, Jr. as a rebuttal witness. He was the attorney for the State during Petitioner's trial. Mr. Carter testified that he did not "recall there ever being an offer" in Petitioner's case. Mr. Carter assured the post-conviction court that an offer of twenty-five years was "way out of the realm of what [he] would consider possible."

After examining all of the evidence presented at the hearing, the post-conviction court entered an order denying post-conviction relief. In the order, the post-conviction court noted that Petitioner failed to prove by clear and convincing evidence that a "pre-trial mental evaluation was required" or that his "mild retardation rose to the level necessary to prove incapacity to stand trial or manifest the intent to commit premeditated murder." Additionally, the post-conviction court ruled that trial counsel made a tactical decision not to call expert witnesses and that Petitioner had failed to show that he was prejudiced by trial counsel's failure to call such witnesses at trial. The post-conviction court concluded that there was no proof in the record that Petitioner had been offered a plea agreement of twenty-five years prior to trial. Additionally, the post-conviction court concluded that Petitioner failed to show proof that trial counsel was prejudiced by failing to object to the phrasing of certain jury instructions. Finally, the post-conviction court determined that trial counsel was not ineffective for failing to put on proof and preserve issues for appeal. The post-conviction court determined that trial counsel investigated the scene, spoke to witnesses, and made a

tactical decision about trial and that Petitioner failed to show that he was prejudiced by trial counsel's actions. As a result of the findings, the post-conviction court denied relief.

Petitioner filed a timely notice of appeal. On appeal, Petitioner challenges only trial counsel's failure to prepare "a defense of mental disease or defect as to Petitioner's mental state before and during the crimes charged."

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record

preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, Petitioner complains that the post-conviction court improperly denied his petition for post-conviction relief. Specifically, Petitioner argues that "trial counsel was deficient for failing to put forth expert testimony regarding Petitioner's mental condition and ability to form intent." Petitioner alleges that he was prejudiced by trial counsel's failures and would have received a different verdict at trial had trial counsel called "any one of the three mental health experts that testified on Petitioner's behalf on the motion to preclude the death penalty." The State disagrees, stating that Petitioner has failed to prove his allegations by clear and convincing evidence.

The record supports the post-conviction court's findings. The record of the post-conviction hearing showed that Petitioner failed to produce any experts to support his contentions. Petitioner must present witnesses at the post-conviction hearing to prevail on a claim of deficient representation for failing to call a witness at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). A post-conviction court may not speculate, "on the question of . . . what a witness's testimony might have been if introduced at trial." *Id.* Although three experts testified at the pretrial hearing to determine whether Petitioner was eligible for the death penalty, there was no testimony presented regarding Petitioner's competency to stand trial or commit the crimes. Further, the testimony at the post-conviction hearing from trial counsel indicated that the trial strategy was that Petitioner would testify and that Petitioner would have been able to show the jury, through his testimony, that he had a diminished capacity. Petitioner made the decision at trial not to testify. Trial counsel did, however, raise the issue of diminished mental capacity in front of the jury through the testimony of Petitioner's own mother. This Court pointed out on direct appeal that the jury knew Petitioner was in special education classes and heard testimony about the kind of things he could and could not do on his own. *Mack Tremaine Jones*, 2007 WL 1840798, at *8. Again, "[t]he petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful,

tactical decision made during the course of the proceedings." *Adkins*, 911 S.W.2d at 347 (citing *State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1982)). Petitioner has failed to show prejudice by trial counsel's failure to call these expert witnesses at trial. Petitioner has failed to demonstrate clear and convincing evidence that he is entitled to relief. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JERRY L. SMITH, JUDGE